IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BARBARA DOUCETTE,

Plaintiff,

OPINION AND ORDER

07-cv-292-bbc

v.

MINOCQUA, HAZELHURST AND LAKE TOMAHAWK JOINT SCHOOL DISTRICT NO. 1 and JAMES ELLIS,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In Garcetti v. Ceballos, 547 U.S. 410, 421 (2006), the Supreme Court dramatically changed the landscape of retaliation cases brought by public employees when it held that the First Amendment's protections do not extend to statements made by employees "pursuant to their official duties." This holding imposes a substantial new obstacle for employees: most cases decided by the court of appeals since Garcetti have resulted in dismissal as a result of a conclusion that the plaintiff was speaking as an employee rather than as a citizen. E.g., Vose v. Kliment,506 F.3d 565 (7th Cir. 2007); Sigsworth v. City of Aurora, Illinois, 487 F.3d 506 (7th Cir. 2007); Spiegla v. Hull, 481 F.3d 961 (7th Cir. 2007) (overruling earlier opinion because of Garcetti); Mayer v. Monroe County Community School Corp.,

474 F.3d 477, 480 (7th Cir. 2007); Mills v. City of Evansville, Indiana, 452 F.3d 646 (7th Cir. 2006); see also Haka v. Lincoln County, 533 F. Supp. 2d 895, 919 (W.D. Wis. 2008).

Defendants Minocqua, Hazelhurst and Lake Tomahawk Joint School District and James Ellis would like to continue that trend in this case. They relieved plaintiff Barbara Doucette of her duties as the school district's psychologist and "pupil services coordinator" after she gave the local police department information that a special education teacher was having contact with students who had accused him of abuse. Plaintiff seeks damages under 42 U.S.C. § 1983 on the ground that defendants' discipline of her violated the First Amendment because it was taken in retaliation for speech that she made on a matter of public concern. The sole issue defendants raise in their motion for summary judgment is whether Garcetti bars her claim. (Defendants raised other issues initially but abandoned them in their reply brief.)

I conclude that plaintiff's claim survives Garcetti. Although neither side proposes facts detailing plaintiff's responsibilities, there is a plausible argument that plaintiff had a general duty to protect students at her school and that her contact with the police could fall within that duty. However, defendants' argument fails for a simple reason: defendant Ellis expressly took from plaintiff any responsibility she may have had for investigating or reporting the allegations that students were making against the special education teacher. Ellis told plaintiff she had no supervisory authority over the teacher and later explained that

she was being disciplined because she had meddled in affairs that were unrelated to her job. An employer may not limit an employee's duties and then rely on Garcetti to argue that an employee was speaking "pursuant to" those duties. Defendants' motion for summary judgment must be denied.

Two other motions are before the court, both of which will be denied as well. First, plaintiff seeks to amend her complaint to add an insurance company, but as the court of appeals and this court have held, insurance companies are not proper parties in a case brought under 42 U.S.C. § 1983. Gullick v. Ott, 517 F. Supp. 2d 1063, 1063 n.1 (W.D. Wis. 2007) (citing Wagner v. Washington County, 493 F.3d 833, 836 (7th Cir. 2007)). Second, defendants seek to amend their answer to include a defense that they would have disciplined plaintiff even if she had not engaged in protected speech. Such an amendment is not necessary. The "defense" defendants seek to add is simply part of the evidentiary framework for First Amendment retaliation claims under Mt. Healthy Bd. of Education v. Doyle, 429 U.S. 274 (1979), something that defendants have no burden to plead. Swierkiewicz v. Sorema, 534 U.S. 506 (2002).

Before setting forth the undisputed facts, I note a problem that arose in defendants' responses to plaintiff's proposed findings of fact: defendants repeatedly raised an erroneous hearsay objection. For example, each time plaintiff proposed a fact regarding a conversation she had with another person, defendants objected that the fact was "based on inadmissible

hearsay." Defendants' objections are not well founded because plaintiff was not offering evidence of the conversations for their truth, but only to show that certain statements were made to her and the effect the statements had on her. Fed. R. Evid. 801(c) (statement is not hearsay unless it is "offered to prove the truth of the matter asserted"). For example, plaintiff proposed facts about statements a police officer made to her during a telephone conversation. Plaintiff has personal knowledge of the officer's statements and may testify regarding what the officer said. It does not matter for the purpose of this case whether the officer's statements were true.

From the parties' proposed findings of fact and the record, I find that the following facts are undisputed.

## UNDISPUTED FACTS

In 2006 plaintiff Barbara Doucette was the "Pupil Services Coordinator" and the school psychologist for defendant Minocqua, Hazelhurst and Lake Tomahawk Joint School District. Her duties included "overseeing" the special education program and serving as the special education program's "contact person" for state and federal agencies. Her duties did not include reporting potential criminal violations by other school district employees. (The parties proposed no other facts regarding the responsibilities plaintiff had as the "Pupil Services Coordinator" and neither side explained in their proposed findings of fact how

plaintiff "oversaw" the special education program or what duties the "contact person" has.)

In March 2006, Victor Saeger, a special education teacher for the school district, was accused of mistreating some of his students. Saeger was supervised by defendant James Ellis, the administrator for the school district, and Peg Wolff, the principal. Plaintiff had no supervisory authority over Saeger.

Defendant Ellis initiated an internal investigation into the allegations, directing plaintiff to help conduct interviews of the students making the allegations and other witnesses. Plaintiff used those interviews to write reports that defendant Ellis and the school district's lawyers used at Saeger's disciplinary hearing.

The local police department conducted an investigation as well. As a result of these investigations, Saeger was suspended with pay. The county later criminally charged Saeger with physical abuse of a child and causing mental harm to a child. Defendant Ellis allowed Saeger to continue teaching but prohibited him from having contact with the students who had made allegations against him.

On August 10, 2006, the school board held a disciplinary hearing regarding the charges against Saeger. At the hearing, plaintiff reported her findings to the board. After hearing from all the witnesses, the board voted to allow Saeger to return to work pending resolution of the criminal charges and on the condition that he agree to an "improvement plan." When plaintiff spoke to defendant Ellis about the improvement plan, Ellis told

plaintiff that he was "retaining sole supervisory authority over Saeger," that he was the only person who had responsibility for Saeger's conduct and that plaintiff should "move on."

On November 10, 2006, plaintiff sent defendant Ellis the following email:

> Would you please remind [Saeger] that he is not to be with [S.R., a student who made allegations against Saeger], or would you prefer that I talk to him? Today [S.R. was] working in Mary's room and [Saeger] was there. . . . When [Saeger] sees [S.R.] in a room, he needs to not go in. This is important because otherwise he is violating his bond agreement and so are we.

Defendant Ellis did not respond to plaintiff's email. (The parties dispute whether Ellis spoke with plaintiff about these allegations on November 13.)

On November 15 a social worker told plaintiff that Saeger was having multiple contacts with other students who had complained about him. The social worker said that she needed to report these contacts to the police; she said that she had tried to speak with defendant Ellis but he was unavailable.

Later that day plaintiff called the county clerk to find out more about the "no contact" order in Saeger's bond agreement. The clerk's office referred plaintiff to the district attorney's office, which then referred her to the police department. She told the police that she wanted information about Saeger's no contact order, but did not want to file a report and did not want the police to come to the school. The officer told plaintiff that her call would have to be "log[ged] as a complaint" if she wanted information about the bond agreement. Plaintiff said "yes" when the officer asked her whether Saeger was having contact

with students.

After this conversation, plaintiff went to speak with defendant Ellis at his office but she "was told that he was not available." She also received an email from another school district employee regarding Saeger's alleged contact with a student on November 10. Plaintiff forwarded this email to the principal and to defendant Ellis, but neither responded.

In late afternoon, plaintiff received a telephone call from S.R.'s father, who told plaintiff that he had spoken with the police about Saeger's alleged contact with S.R. Plaintiff spoke with the principal about the telephone call and her concern about the situation in general. The principal did not provide any guidance.

On November 17, S.R.'s father called plaintiff to tell her that he had called the police and they would be visiting the school. When plaintiff went to the principal's office to inform him of the call, she saw a police detective enter the office.

After the officer left the school, defendant Ellis called plaintiff from his car. He asked plaintiff whether she had reported Saeger to the police and asked them to come to the school to investigate; plaintiff said she had not. (The parties dispute whether plaintiff denied having any contact with the police.) Ellis told plaintiff that he was so upset he had to pull off the road.

As a result of the police investigation, Saeger was criminally charged with violating the conditions of his bond.

On November 20, defendant Ellis asked plaintiff to meet with him and school board member Billy Fried. Ellis again asked plaintiff whether she had reported Saeger to the police department and asked the police to come to the school. Plaintiff told Ellis that she had called the police for information, but that she had specifically asked them not to come to the school.

On November 29, defendant Ellis told plaintiff that he was meeting with the school board later that day. In anticipation of that meeting, he asked plaintiff to put in writing her concerns about Saeger's contacts with students and "to outline what [she] had done." In her response to Ellis's request, plaintiff discussed her initial discovery on November 10 that Saeger was having improper contact with students, the social worker's statements on November 15 that she would have to call the police and plaintiff's own calls to the police department. In describing that call, plaintiff wrote that she wanted "to get further information for the administrative team on what would be expected of us." (Neither side proposes any facts explaining the function of the "administrative team.")

On December 15, defendant Ellis gave plaintiff a letter with the subject line "Direction/Job Description/Reprimand." He wrote:

> As District Administrator, I expected you to carry out all the job duties that made up your Pupil Services Director/School Psychologist position. Accordingly, I wanted your focus and energy to be on the students you served and the special education staff members that you were assigned to supervise.

> The Board of Education has charged me with the task of supervising Mr. Saeger. Accordingly, I am instructing you to refrain from conducting any additional, independent investigations into issues regarding Mr. Saeger. If you have any concerns regarding Mr. Saeger or receive any reports regarding Mr. Saeger's conduct, please bring them to my attention immediately so that I may address these reports/concerns in a timely manner. . . .
>
> . . . I am reminding you to not make any judgment calls regarding Mr. Saeger or take any action against Mr. Saeger without my prior knowledge and approval. Any actions you take that exceed the authority given to you in your job description or any actions taken that are not directed by or approved by the District Administrator will result in disciplinary action. As part of this reprimand and as a reminder that the District takes insubordination very seriously, you will be docked 3 days pay in your next paycheck.

The same day plaintiff received a letter from the school board president notifying her that the board was "considering nonrenewal of [her] contract" and that she was being "placed on a non-disciplinary, paid administrative leave." In another letter the following week, the board explained that it was taking these actions because plaintiff's "communication within the school is unsatisfactory," she "has repeatedly exceeded the authority given to her by virtue of her position as Pupil Services Director/School Psychologist" and she "has been insubordinate."

Plaintiff remains on administrative leave today.

## OPINION

The issue raised by defendants' motion for summary judgment is whether plaintiff's

speech at issue in this case is protected by the First Amendment. A preliminary question is what speech is at issue. When plaintiff was relieved of her duties at the school district, defendant Ellis reprimanded her for "conducting . . . independent investigations into issues regarding Mr. Saeger." In their brief in chief, defendants repeat this reason and add that plaintiff was disciplined for "lying to [her] employer." Dfts.' Br., dkt. #10, at 2.

Defendants are not clear regarding the speech they believe these reasons encompass; they mention a number of statements by plaintiff in their proposed findings of fact, but the only speech they discuss in the argument of their brief in chief is plaintiff's "contacting the Minocqua Police Department" and her alleged "failure to be honest on two occasions to the Superintendent and a Board member when questioned about her reporting to the police." Id. at 11-12. Because plaintiff denies that she lied about her contact with the police, putting the issue into dispute, I cannot take into consideration her alleged "failure to be honest." In deciding the motion for summary judgment, I will consider only the statements plaintiff made to the police department regarding Victor Saeger. Hemsworth v. Quotesmith Com, Inc., 476 F.3d 487, 489 (7th Cir. 2007) (in reviewing motion for summary judgment, court must "construe all facts and make all reasonable inferences in the light most favorable to" nonmoving party). (In their reply brief, defendants incorporate other statements by plaintiff into their argument, but I cannot consider those. Nelson v. La Crosse County District Attorney, 301 F.3d 820, 836 (7th Cir. 2002) (arguments raised for the first time in reply

brief are waived).)

Defendants identify several reasons in their brief in chief regarding why plaintiff's speech is not protected, but they abandoned all but one of these arguments in their reply brief: that plaintiff's statements to the police had no First Amendment protection under Garcetti v. Ceballos, 547 U.S. 410 (2006), because she made them "pursuant to her official duties." In Garcetti, 547 U.S. at 419, the Supreme Court held for the first time that public employees' free speech rights are limited to instances in which they are "speaking as citizens" because "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." Id. at 421-22. For this proposition the Court cited Rosenberger v. Rector and Visitors of University of Virginia, 515 U.S. 819, 833 (1995), which held that "when the government appropriates public funds to promote a particular policy of its own it is entitled to say what it wishes." Thus, the Court appears to be saying that when a public employee speaks pursuant to her job duties, she is in essence speaking on behalf of the government and the government should have complete authority over its own speech.

Thus, the question in this case is whether, when plaintiff contacted the police, she was speaking as the pupil services coordinator and school psychologist (and thus speaking on behalf of the school district) or speaking as a concerned citizen (and thus speaking for herself

only). Determining the capacity in which an employee is speaking is not always an easy task; there is no clear line between "official" speech and "nonofficial" speech." Because the plaintiff in Garcetti, 547 U.S. at 424, conceded that he was acting pursuant to his job duties, the Court did not need to set forth a "comprehensive framework for defining the scope of an employee's duties."

Defendants interpret "pursuant to official duties" in the context of this case to cover any speech by plaintiff that was "addressing matters that would affect the [school district] and the special education program." Dfts.' Reply Br., dkt. #35, at 11. This is reading Garcetti too broadly; speech is not excluded from First Amendment protection simply because it may "affect" the employer. In Garcetti, the Court held that the First Amendment may protect an employee's speech even when it is "related to the speaker's job." Id. at 421. The Court cited Givhan v. Western Line Consol. School District, 439 U.S. 410, 414 (1979), and Pickering v. Board of Ed. of Township High School District 205, Will County, 391 U.S. 563 (1968), as examples. In Pickering, 391 U.S. at 564, a school teacher wrote a letter to the editor criticizing the school district's manner of "handl[ing] past proposals to raise new revenue for the schools." In Givhan, 439 U.S. at 414, a school teacher criticized the principal for what she viewed as racially discriminatory employment policies and practices at the school. In both of these cases, the speech could "affect" the employer, but that was not enough for the Court to conclude that the teacher in each case was not speaking as a

citizen. See also City of San Diego v. Roe, 543 U.S. 77, 82 (2004) ("[P]ublic employees are often the members of the community who are likely to have informed opinions as to the operations of their public employers, operations which are of substantial concern to the public. Were they not able to speak on these matters, the community would be deprived of informed opinions on important public issues.")

Plaintiff points to the undisputed fact that it was not part of her job duties to contact the police with concerns about students. This, she says, was something that anyone in the community would feel obligated to do if she had the same information plaintiff had. Passages in Garcetti support this reading. In discussing the scope of its holding, the Court said that it applies only to "the duties an employee actually is expected to perform," id. at 424-25, and not to "statements or complaints . . . that are made outside the duties of employment," id. at 424. Similarly, the Court said that speech is not protected when it is "fulfilling a responsibility," id. at 421, when it is part of what the plaintiff was "employed to do," id. and when it is "work product." id. at 422. Other courts have been more likely to conclude that an employee was speaking as a citizen when she was addressing an audience outside her employer. E.g., Morales v. Jones, 494 F.3d 590, 598 (7th Cir. 2007) (statements made in deposition not implicated by Garcetti); Freitag v. Ayers, 468 F.3d 528, 545 (9th Cir. 2006) (complaint of correctional officer to senator and inspector general not implicated by Garcetti).

Defendants' primary response to this is that plaintiff's own characterizations of her contact with the police suggest that she was acting on behalf of the school and pursuant to her official duties. For example, they cite her November 29, 2006 memo in which she said that she called the police "to get further information for the administrative team on what would be expected of us." Plaintiff advances the opposite position, which is that she could not have been acting pursuant to her official duties because defendants told her that her actions exceeded her authority as the pupil services coordinator.

The parties' arguments raise the question whether, under Garcetti, speech is protected when an employee believes that she is speaking pursuant to her job duties but the employer believes she is acting outside the scope of her employment. In other words, is the test objective or subjective? And if it is subjective, is it the employer's or the employee's point of view that matters more? Neither side addresses this issue directly or cites any cases that have.

It makes little sense to tie the test to an employee's personal motivations. This would make the scope of the First Amendment contingent on the beliefs of even the most delusional employee. Obviously, if plaintiff had been disciplined for discussing an opinion she had on the mental health of a student, this would be speech made pursuant to her official duties, regardless whether she thought it was. Further, Garcetti suggests that if anyone's perception matters, it is the employer's. Again, Garcetti frames the question as

whether the speech is something the plaintiff was "employed to do," id. at 421, or whether the speech involves "duties an employee actually is *expected* to perform," id. at 424-25 (emphasis added), not whether the employee *thought* she should perform a particular action. But cf. Restatement (Third) Agency § 7.07, comment b (2006) ("[A]n employee's conduct is outside the scope of employment when it occurs within an independent course of conduct intended to serve no purpose of the employer.") (Defendants mention a slightly different argument in their brief, which is that plaintiff *represented* herself to the police as the school district's pupil services coordinator, but they do not propose any facts supporting this view, so I may not consider it. Procedure to Be Followed on Summary Judgment, I.B.3.)

Defendants advance an alternative argument, which is that even if plaintiff's explicit duties did not include reporting matters to the police, they did encompass matters such as "overseeing" the special education program and insuring the well being of children. Plaintiff's contact with the police, defendants say, could fall under these general responsibilities even if plaintiff did not have a specific duty to contact the police in any particular circumstance.

This argument is fine as far it goes. In Garcetti, 547 U.S. at 425, the Court acknowledged that "the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." The court of appeals

went further in Vose v. Kliment, 506 F.3d 565 (7th Cir. 2007), in which it held that Garcetti may apply even when the employee goes "above and beyond his routine duties" and even when he does not have "explicit responsibility" for the matters he is addressing. In other words, the inquiry is a practical one. Even if an employee is not required to take a particular action, it may still be performed "pursuant to" the employee's duties. Thus, in Haka v. Lincoln County, 533 F. Supp. 2d 895 (W.D. Wis. 2008), I concluded that a child support agency administrator's letter to another agency head was written pursuant to his official duties even though he did not have authority over the subject matter of the letter, which dealt with staffing by the other agency. Because the focus of the letter was the plaintiff's concern with the effect on his own agency, he wrote it as the child support administrator and not as a citizen concerned about government inefficiency.

Vose and Haka do not help defendants, for two reasons. First, defendants failed to propose any facts explaining what responsibilities plaintiff had as "overseer" of the special education program in particular or as "pupil services coordinator" in general. Thus, it is impossible to determine whether plaintiff's speech might have been encompassed by those duties. Second, and more important, I agree with plaintiff that even if a call to the police could fall generally within duties related to being a "pupil services coordinator," defendants made it clear that they had retracted any responsibility plaintiff might have otherwise had for investigating, monitoring or reporting any matters related to Saeger's interactions with

students. Defendants cannot argue successfully that plaintiff was speaking "pursuant to official duties" when it was they who told her that she was acting contrary to them. This point distinguishes all of the cases defendants cite in support of their motion: in none of them had the employee's actions been expressly eliminated from her responsibilities. Williams v. Dallas Independent School District, 480 F.3d 689 (5th Cir. 2007); Casey v. West Las Vegas Independent School District, 473 F.3d 1323 (10th Cir. 2007); Green v. Board of County Commissioners, 472 F.3d 794 (10th Cir. 2007); Pagani v. Meriden Bd. of Education, Civil Action No. 3:05-CV-01115 (JCH), 2006 WL 3791405 (D. Conn. Dec. 19, 2006). Accordingly, I cannot conclude that defendants are entitled to summary judgment on the ground that plaintiff's claim is barred by Garcetti.

It is important to point out that the issue is not simply whether Garcetti falls out of the picture every time an employee disobeys instructions. "Pursuant to official duties" is not limited to "following orders." After all, there will be few cases in which an employee is disciplined for doing exactly what she is told; there will usually be a determination that the employee has stepped "out of bounds" in some way. Garcetti is inapplicable in this case not because plaintiff was insubordinate, but because defendants had stripped her of any authority on the matter on which she was speaking.

Plaintiff is seeking damages, which means that her claim is subject to a defense of qualified immunity. To overcome the defense, plaintiff must show that the law at the time

she was disciplined gave defendants "fair warning" that their actions violated the Constitution. Hope v. Pelzer, 536 U.S. 730 (2003). Defendants have raised the defense on the ground that courts "are still refining the concept and scope of 'official duties' in the wake of Garcetti." Dfts.' Br., dkt. #10, at 19

I agree with defendants that the "gray area between speech made pursuant to an official duty and speech made as a citizen is significant." Haka, 533 F. Supp. 2d at 918. But this does not mean, as defendants appear to suggest, that public employers are now entitled to qualified immunity in every First Amendment retaliation case. The question is whether defendants could read Garcetti reasonably to permit retaliation under the facts of this case. I conclude that they could not. Although the contours of Garcetti are still being refined, it is clear that the case does not extend to activities that have been expressly excluded from the employee's duties by the employer. In other words, "*pursuant* to official duties" cannot be read reasonably to mean "*contrary* to official duties." This is apparent from Garcetti alone, which means that defendants are not entitled to qualified immunity. Defendants' motion for summary judgment must be denied.

ORDER

IT IS ORDERED that

1. The motion for summary judgment filed by defendants Minocqua, Hazelhurst and

Lake Tomahawk Joint School District and James Ellis, dkt. #9, is DENIED.

2. Plaintiff Barbara Doucette's motion for leave to file an amended complaint, dkt. #42, is DENIED.

3. Defendants' motion for leave to file an amended answer, dkt. #39, is DENIED as unnecessary.

Entered this 11th day of June, 2008.

BY THE COURT:

/s/
______________________________
BARBARA B. CRABB
District Judge